NOT FOR PUBLICATION                    (Docket Entry Nos. 24, 25)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____     :
                                    :
JAMES O'KANE and JOSEPHINE          :
O'KANE, and BRIAN BUCKLEY           :
and GAIL BUCKLEY,                   :
Individually and trading as         :
384 47th PLACE CONDO                :
ASSOCIATION,                        :
                                    :
                 Plaintiffs,        :     Civil No. 04-1667 (RBK)
                                    :
            v.                      :     **OPINION**
                                    :
HARTFORD FIRE INSURANCE             :
COMPANY,                            :
                                    :
                 Defendant.         :
_____     :

**KUGLER**, United States District Judge:

    This matter comes before the Court on Defendant Hartford

Fire Insurance Company's Motion to Dismiss and Motion for Summary

Judgment.

    Hartford moves to partially dismiss the Complaint filed by

Plaintiffs James and Josephine O'Kane, and Brian and Gail

Buckley.  Their Complaint asserts claims for breach of contract,

breach of the duty of good faith and fair dealing, bad faith,

1

misrepresentation, and detrimental reliance, and seeks
compensatory and punitive damages as well as attorney's fees.
Hartford asserts that all claims, except for the breach of
contract claim, are preempted by federal law or, in the
alternative, fail to state a claim on which relief may be
granted.

Hartford moves for summary judgment on Plaintiffs' breach of
contract claim.  Plaintiffs argue that their property sustained
damage during a flood, thus entitling them to reimbursement from
Hartford.  Hartford asserts that Plaintiffs failed to satisfy all
of the requirements necessary to collect on their claim.  In
particular, Hartford claims that Plaintiffs are not entitled to
payment on their flood insurance policy because Plaintiffs failed
to file a timely proof of loss and failed to show that the
damages were the result of a flood.

For the reasons set forth herein, this Court will grant
Hartford's Motion to Dismiss and its Motion for Summary Judgment.

## I.   FACTUAL BACKGROUND

Plaintiffs own 384 47th Place, Sea Isle City, New Jersey
("the property").  Plaintiffs held an insurance policy on the
property issued by Hartford. (Compl. First Count ¶ 2.)  Hartford
is a Write-Your-Own Program Carrier ("WYO") that participates in

the National Flood Insurance Program ("NFIP"), which is paid for

by the Federal Emergency Management Act ("FEMA") with funds from

the United States Treasury.  (Berger aff. ¶¶ 3-7.)

Plaintiffs claim that the property was damaged by what was

"believed to be the result of a flood" at some point between

February 17th and 23rd of 2003.  (Compl. First Count ¶ 3.)

Plaintiffs have attempted to collect these damages from Hartford

pursuant to Plaintiffs' "homeowner's" policy.[1] (Compl. Second

Count ¶ 2.)

Because they spent winters at their permanent residences,

Plaintiffs were not present when the damage to the property

occurred.  (James O'Kane Dep. at 26-27.)  Upon returning to the

property on or about April 28, 2003, James O'Kane noticed damage

to the foundation of the building.  (James O'Kane Dep. at 28.)

O'Kane deposed that he noticed that dirt was washed away from the

foundation and that the floor of the bedroom that was over this

area of the foundation had some "flexibility or movement" on it.

---

[1]Hartford asserts that "Hartford Fire Insurance Company only issues Standard Flood Insurance Policies.  Therefore, the claims at issue in the case at bar are presented under a National Flood Insurance Program Standard Flood Insurance Policy."  (Def.'s Mot. to Dismiss at 7; see also Berger Aff. ¶ 4.) Hartford also asserts in its Motion for Summary Judgment, but without attaching the policy, that Plaintiff's policy was for the term of 11/17/03-11/17/04. At the request of this Court, Defendant submitted a certified copy of the relevant policy in September 2005.

(James O'Kane Dep. at 27-8.)  He also noticed that the deck on the property was sagging and split in some places, and the bulkhead had been damaged.  (James O'Kane Dep. at 29.)  As for damage inside the building, O'Kane noticed some cracks in the walls, but stated that he did not notice signs that water had actually been inside the building.  (James O'Kane Dep. at 32-4.)

Hartford learned of Plaintiffs' claims on April 28, 2003, and it paired Plaintiffs with Alex Boulageris, a claims adjuster, to assist with the filing of the claim.  (Berger Aff. ¶ 10.)  Plaintiffs also hired Wheeler Adjustment Services, Inc. ("Wheeler") to assess the loss.  (Berger Aff. ¶ 12.)  In July 2003, Boulageris requested that Hartford send an engineer to inspect the property. (Berger Aff. ¶ 11.)  On or about August 12, 2003, Hartford hired Dr. E. Paul Hartzell, a forensic engineer with National Forensic Consultants, to inspect the premises. (Berger Aff. ¶¶ 11, 13.)

Wheeler and Dr. Hartzell came to different conclusions regarding the cause of the damage to the property.  Dr. Hartzell's report, dated September 10, 2003, asserted that none of the property damage was a direct result of a flood.  (Berger Aff. ¶ 13.)  Dr. Hartzell found that a "visual inspection of [the property] indicates no evidence of structural damage or even

4

minor cosmetic damage related to flooding." (Letter from
Hartzell to Irvin of 9/10/03, at "Analysis".)  He further stated
that he spoke with the chief of police who had no record of
flooding in the area or recollection of complaints of flooding in
the area.  (Letter from Hartzell to Irvin of 9/10/03, at
"Analysis".)  His report concluded that the damage to the
property was a result of "environmental stresses and their
accompanying strains, coupled with human activity." (Letter from
Hartzell to Irvin of 9/10/03, at "Conclusions".)

    As a result of this report, Hartford denied Plaintiffs'
claim.  In response to this denial, Wheeler sent a letter
contesting the chief of police's memory of the period during
which the alleged flooding occurred. (Letter from S. Wheeler to
Berger of 10/21/2003, ¶ 3.)  With this letter, Wheeler sent
computer print-outs of weather reports from February 22, 2003.
The weather reports mention heavy rain in places that Hartford
maintains are too far from Sea Isle City to be proof of heavy
rain in that area--the closest place mentioned being eighteen
miles from Sea Isle City.  (Letter from Hartzell to Berger of
1/13/04, ¶ 6).

    Hartford again denied Plaintiffs' claim and Plaintiffs filed
this action in the Superior Court of New Jersey in March 2004.

In her affidavit, Kim Berger, an employee of National Flood
Services, the company that processes flood claims for Hartford,
states that Plaintiffs made a claim for their alleged flood
damage through Hartford on or about April 28, 2003. (Berger Aff.
¶ 10.)  James and Josephine O'Kane signed a proof of loss
statement on August 25, 2003, and Brian Buckley signed a proof of
loss statement on August 27, 2003.  (Berger Aff. ¶ 18).

In the Complaint, Plaintiffs assert that, by denying the
claim for benefits, Hartford has breached a contract, breached
the duty of good faith and fair dealing, acted in bad faith, and
misrepresented facts about the contract, on which Plaintiffs
relied to their detriment.  Plaintiffs assert that they are
therefore entitled to compensatory and punitive damages as well
as attorney's fees and costs of this litigation.

Hartford sets forth two arguments in defense.  It first
asserts that Plaintiffs' state law claims are barred and
preempted by federal law because the insurance policy under which
Plaintiffs attempt to collect damages is a federally administered
flood insurance policy, which is governed exclusively by federal
law.[2]  In the alternative, Hartford argues that even if

---

[2] Hartford's memorandum in support of its motion to dismiss also
makes arguments under the Commerce Clause and the Appropriations
Clause of the U.S. Constitution.  Although preemption doctrine

6

Plaintiffs' claims of misrepresentation and detrimental reliance are not preempted by federal law, Plaintiffs fail to state a claim on which relief can be granted because Plaintiffs are charged with the responsibility of understanding the contract that they signed and fulfilling their obligations under that contract.

Second, Hartford asserts that it is entitled to summary judgment for Plaintiffs' breach of contract claim.  Hartford argues that Plaintiffs' claims fail because (1) Plaintiffs failed to prove that a flood occurred, (2) Plaintiffs failed to timely submit a signed and sworn proof of loss, and (3) Plaintiffs claimed damages are not recoverable under the insurance policy.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiffs' allegations along with all reasonable inferences that may be drawn from them

---

has constitutional roots in the Supremacy Clause, the underlying question in preemption claims is primarily statutory in nature because it necessarily involves the comparison of two statutes. Swift & Co. v. Wickham, 382 U.S. 111, 120 (1965). Because the present motion to dismiss can be resolved on "statutory" preemption grounds, we will decide that issue and avoid unnecessary constitutional adjudications with respect to the Commerce and Appropriations Clauses.  See C.E.R. 1988, Inc.  v. Aetna Cas. & Sur. Co., 386 F.3d 263, 272 n.13 (3d Cir. 2004).

as true.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing

Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d

Cir. 1994)).  The Court may dismiss the Complaint only if

Plaintiffs can prove no set of facts that would entitle them to

relief.  Burstein v. Retirement Account Plan for Employees of

Allegheny Health Education and Research Foundation, 334 F.3d 365,

374 (3d Cir. 2003) (citation omitted).

### B.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  In deciding

whether there is a disputed issue of material fact, a court must

view the facts and all reasonable inferences in a light most

favorable to the nonmoving party.  Anderson v. Consol. Rail

Corp., 297 F.3d 242, 247 (3d Cir. 2002).

The moving party always "bears the initial responsibility of

informing the district court of the basis for its motion, and

identifying those portions of the 'pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which it believes demonstrate the

8

absence of a genuine issue of material fact." <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of persuasion at trial, however, "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.  The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact. FED. R. CIV. P. 56(e); <u>Fireman's Ins. Co. of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' mandates the entry of summary judgment." <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting <u>Celotex</u>, 477 U.S. at 322).

**III.  DISCUSSION**

    A homeowner may obtain flood insurance only from the NFIP, and such insurance is issued exclusively as a Standard Flood Insurance Policy ("SFIP") through either the government or through a WYO.  <u>See</u> 44 C.F.R. § 61.13(f); <u>see also</u> <u>Garcia v.</u>

Omaha Prop. & Cas. Ins. Co., 933 F. Supp. 1064, 1070 (S.D. Fla. 1995) aff'd 95 F.3d 58 (11th Cir. 1996).[3]   There are three types of SFIPs: (1) the Residential Condominium Building Association Policy ("RCBAP"), (2) the "Dwelling" form, and (3) the "General Property" form.

After issuing a policy and handling the claims disbursement, the WYO receives a commission on the policy, but the claims are paid from United States Treasury funds, through the program administered by FEMA.   Scherz v. South Carolina Ins. Co., 112 F. Supp. 2d 1000, 1004 (C.D. Cal. 2000).

Every RCBAP form SFIP, whether issued by the government or a WYO, has identical language.   Garcia, 933 F. Supp. at 1067.   As of December 31, 2000, regardless of whether an insured holds a "Dwelling" form, a "General Property" form, or a RCBAP form, all

_____

[3]The Third Circuit has repeatedly stated that the purpose of the NFIP is to:

> provide standardized insurance coverage for flood damage at
> or below actuarial rates.   Prior to its enactment, few
> insurance companies offered flood insurance because private
> insurers were unable profitably to underwrite flood
> policies.   The Program was intended to minimize costs to
> taxpayers by "limiting the damage caused by flood disasters
> through prevention and protective measures."

C.E.R. 1988, Inc.  v. Aetna Cas. & Sur. Co., 386 F.3d 263, 266 (3d Cir. 2004) (quoting Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161 (3d Cir. 1998)).

three SFIPs contain explicit language stating that disputes arising out of the handling of a claim are to be governed under FEMA and the federal common law.  44 C.F.R. Pt. 61, App. A(3).

Each SFIP also requires the property owner to file a proof of loss statement within sixty days of the loss and advises the insured of the possibility that the insurance adjuster's report may be accepted over the insured's report when determining the amount of loss to be paid.  44 C.F.R. Pt. 61, App. A(3).

To deviate from any requirement contained in the SFIP, the insured may petition the Federal Insurance Administrator ("FIA") for a waiver.  44 C.F.R. § 61.13(d).  Without a waiver, the WYO must strictly adhere to the SFIP.  C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 267 (3d Cir. 2004); see also Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 810 (3d Cir. 2005); c.f. Kennedy v. CNA Ins. Co., 969 F. Supp. 931, 934 (D.N.J. 1997) (noting that waiver and estoppel do not apply against the federal government with regard to the failure to file a proof of loss statement).

With the foregoing principles in mind, and for the reasons outlined below, the Court will grant both of Hartford's motions. The Court will address the motion to dismiss before turning to the motion for summary judgment.

11

### A.  Motion to Dismiss State-Law-Based Claims

Hartford argues that Plaintiffs' state law based claims, including breach of the duty of good faith and fair dealing, bad faith, misrepresentation, and detrimental reliance, along with the demands for damages and attorney's fees should be dismissed because they are preempted by federal law.  In the alternative, Hartford argues that Plaintiffs' claims of misrepresentation and detrimental reliance fail to state a claim on which relief can be granted because all holders of federal insurance policies are charged with the constructive knowledge of the scope of their policy's coverage.

For the reasons discussed below, this Court finds that Plaintiffs' claims of bad faith and breach of the implied covenant of good faith and fair dealing are preempted, and their claims of misrepresentation and detrimental reliance, even if not preempted, are otherwise invalid.

Federal law may preempt state law under three different theories: (1) express preemption, (2) field preemption (also called implied preemption), or (3) conflict preemption.  <u>Green v. Fund Asset Mgmt., L.P.</u>, 245 F.3d 214, 222 (3d Cir. 2001). Express preemption exists where there is an explicit statutory command from Congress displacing state law. <u>Id.</u>  Preemption is implied if

12

"federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it."  Id. (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)).  Finally, a state law is displaced by conflict preemption when (1) it is impossible to comply with both the state and the federal law, or (2)the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 381-82 (3d Cir. 1999) (en banc) (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)).

Although express preemption under the NFIP has not been decisively determined in this jurisdiction, the language of the SFIP does appear to expressly preempt the Plaintiffs' claims of bad faith and breach of the duty of good faith and fair dealing. All SFIP issued after December 30, 2000, including the one at issue here, contain the following language regarding applicable law, "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 40001, et seq.), and Federal common law." 44 C.F.R. pt. 61, App. A(1), art. (X).

13

In C.E.R., the Third Circuit strongly suggested that this new language would expressly preempt state law.  See C.E.R., 386 F.3d at 269 (noting that although conflict preemption preempted the instant claim because the policy was purchased before the amendment passed, the 2000 amendment "arguably" gives the policy the language needed for express preemption); see also Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005).

Nevertheless, even if the Plaintiffs' bad faith and breach of the duty of good faith and fair dealing claims are not expressly preempted by the SFIP, they are precluded by conflict preemption. C.E.R., 386 F.3d at 272.  In C.E.R., the Third Circuit found that application of state tort law to SFIP disputes would impede Congress' objectives in enacting the NFIP. Id. A primary purpose of the NFIP is to "reduce fiscal pressure on federal flood relief efforts" and "state tort suits against WYO companies, which are usually expensive, undermine this goal." Id. Because FEMA ordinarily incurs the costs of defending lawsuits against a WYO company, state law claims relating to WYO-issued SFIPs actually increase the fiscal pressure on FEMA by draining its funds. See id.  Consequently, state tort claims, like Plaintiffs' claims of bad faith and breach of the duty of good faith and fair dealing, are incompatible with the objectives of

14

the NFIA, and therefore, preempted. Id. at 272. The efficiency goals of the NFIP are better served by requiring claimants to resolve their disputes using the remedies outlined by FEMA. C.E.R., 386 F.3d at 271.

Alternatively, the Third Circuit has used an even "straighter path" to find that certain state tort claims relating to SFIPs are preempted by the NFIA. Id. at 272.  First, the court noted the undisputed principle that federal law preempts state contract law with respect to the interpretation of SFIP language. C.E.R., 386 F.3d at 272 (citing Linder & Assocs. Inc. v. Aetna Cas. & Sur. Co., 166 F.3d 547, 550 (3d Cir. 1999)). Second, citing to Van Holt, the court found that a state claim "sounding in tort" but "intimately related to the disallowance of an insurance claim" is essentially a contractual claim. Id. (citing Van Holt, 163 F.3d at 167).  Therefore, if certain state tort claims relating to SFIP are equivalent to contractual claims relating to the interpretation of an SFIP, then the federal common law preempts state tort law in the same way that it preempts state contract law. See CER, 286 F.3d at 272. Pursuant to this logic, the NFIP preempts Plaintiffs' bad faith and breach of the duty of good faith and fair dealing claims. See id.

15

Although the cases cited above establish the preemption of most of Plaintiffs' state tort claims, Plaintiffs' misrepresentation and detrimental reliance claims may be governed by a different standard. In particular, relevant case law distinguishes between state law claims arising out of the *handling* of claims under the NFIA and state law claims arising out of the *procuring* of claims by a WYO.  See e.g., Spence v. Omaha Indem. Ins., 996 F.2d 793, 796-99 (5th Cir. 1993) (recognizing a distinction between claims arising out of claim handling and claims arising out of claim procurement); Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 513, 521-22 (D.N.J. 2000); Neill v. State Farm Fire & Cas. Co., 159 F. Supp. 2d 770, 775-76 (E.D.Pa. 2000).  As discussed above, federal law preempts state law claims arising out of the *handling* of a claim by a WYO, including breach of the duty of good faith and fair dealing, attorney's fees and costs, and punitive damages.  C.E.R., 386 F.3d at 270.[4]

---

[4]See also Wright, 415 F.3d at 390 (confirming that state provisions on attorney's fees are preempted by federal law); Scherz v. South Carolina Ins. Co., 112 F. Supp 2d 1000, 1008 (C.D. Cal 2000) (holding that conflict preemption precluded plaintiff's claims against a WYO for a breach of the implied covenant of good faith and fair dealing because if plaintiff had received the policy from FEMA directly, plaintiff could only have sued for breach of contract under federal law); 3608 Sounds Ave. Condo. Ass'n v. South Carolina Ins. Co., 58 F. Supp. 2d 499, 502 (D.N.J. 1999)(noting that a claim for punitive damages is

In contrast, where a state law claim arises from the *procuring* of a federal insurance contract, such as misrepresentation in some instances, courts have held that the claim is not preempted by federal law.  <u>Messa</u>, 122 F. Supp. 2d at 521-22.[5]  In <u>Messa</u>, the District of New Jersey relied on the Fifth Circuit's dicta in <u>Spence</u>, where the Fifth Circuit declined to read the SFIP as immunizing WYO companies from liability for the tortious conduct of their agents.  <u>Id.</u> at 521; <u>Spence</u>, 996 F.2d at 797.[6]  Furthermore, the amended provision of the SFIP, even if it expressly preempts state law claims that dispute the handling of claims, says nothing about federal law governing claims that dispute the procuring of claims by the WYO.  In the present case, the Plaintiffs' misrepresentation and detrimental reliance claims arguably relate to claim procurement because the Plaintiffs

---

preempted and that an award of punitive damages would not serve its deterrent effect as private insurance companies have no incentive to deny claims because the claims are paid by the U.S. Treasury).

[5]The <u>Messa</u> court found that "[p]olicy procurement is an entirely different creature than claims handling . . . . [T]he WYO insurers may have the incentive to make fraudulent misrepresentations when trying to get potential customers to sign up for flood insurance in the first place." 122 F. Supp. 2d at 521.

[6]    In <u>Wright</u>, the Fifth Circuit revisited its holding in <u>Spence</u>, and affirmed the distinction between claims arising out of claims handling and claims arising out of claims procurement. <u>Wright</u>, 415 F.2d 384.

assert that they relied upon Hartford's "representation that they would be insured for various losses" at the time Plaintiffs "purchased the homeowners [sic] insurance." (Compl. Third Count ¶ 3.) Assuming the misrepresentation and related detrimental reliance allegations both pertain to claim procurement, those claims would not necessarily be preempted like the other state law claims.

Nevertheless, even if the misrepresentation and detrimental reliance claims are not preempted, they are otherwise invalid. Each holder of a federal insurance contract is charged with the constructive knowledge of all provisions of that contract. See Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 63 (1984) (noting that those who deal with the government for federal funds are expected to know the law and may not rely on conduct of government agents contrary to that law). A claim that an insurance agent misrepresented the scope of the SFIP coverage will fail because the policy clearly states what is and is not covered. Deverant v. Selective Ins. Co., Inc., No. 02-3801, 2005 WL 1171333, *1 (E.D.Pa. 2004) (citing Heckler). The Eastern District of Pennsylvania held that, because the insured is charged by law with the knowledge of the content of the federal insurance policy, it cannot claim that its reliance on any

18

misrepresentation was reasonable. Id.  In other words, the
Plaintiffs may not reasonably rely on the statements of an
insurance agent that are contrary to the terms of an SFIP.

Based on the foregoing, this Court will grant Hartford's
Motion to Dismiss with respect to Plaintiffs' claims of bad
faith, breach of an implied covenant of good faith and fair
dealing, attorney's fees and costs, and punitive damages because
they are preempted by federal law.  Even taking the facts as
pleaded by Plaintiffs, it is clear from the case law that,
regardless of whether the language of the SFIP contains an
express preemption clause, federal law preempts state tort claims
relating to claims handling, either through field or claim
preemption.  Therefore, Hartford's Motion to Dismiss Plaintiffs'
claims for bad faith, breach of a duty of good faith and fair
dealing, attorney's fees and costs, and punitive damages is
granted.

Similarly, this Court will also grant Hartford's Motion to
Dismiss with regard to Plaintiffs' misrepresentation and
detrimental reliance claims because the facts as pleaded fail to
state a claim on which relief may be granted.  Plaintiffs were
put on notice of the provisions of the SFIP at the moment they

19

signed a contract for flood insurance.  Like the plaintiff in
Deverant, Plaintiffs may not claim to have reasonably relied on
any alleged misrepresentation made by Hartford because Plaintiff
is charged with knowledge of the scope and coverage of the
insurance policy contained in 44 C.F.R. Pt. 61 App. A(3).
Therefore, Hartford's Motion to Dismiss Plaintiffs' claims of
misrepresentation and detrimental reliance is granted.

### B.  Motion for Summary Judgment

Hartford moves for summary judgment with respect to
Plaintiffs' breach of contract claim.  In its Motion for Summary
Judgment, Hartford argues (1) that Plaintiffs have not proved
that the damage to their property resulted from a flood, (2) that
Plaintiffs failed to timely submit a proof of loss statement, and
(3) that Plaintiffs' damages are excluded, by definition, from
the SFIP. This Court need only address the timeliness and
adequacy of the Plaintiffs' proof of loss in order to grant
Hartford's Motion for Summary Judgment on the breach of contract
claim.

Hartford asserts that Plaintiffs had sixty days from the
date of the loss to file the proof of loss statement, and because
Plaintiffs did not discover the loss until after the sixty days

had run, they failed to submit the document in a timely manner, thus barring their claim for damages.  Plaintiffs have introduced no evidence that the proof of loss was timely or that they obtained a valid waiver to submit the document after the deadline. Rather, Plaintiffs argue that the Estimate of Loss submitted by their adjuster should suffice in lieu of a sworn and timely proof of loss.  In addition, Plaintiffs assert that Hartford should be estopped from challenging the timeliness of Plaintiffs' proof of loss because Hartford never notified Plaintiffs that (1) the proof of loss was late, or (2) that their claim would be barred if they failed to provide the proof of loss within a certain time frame.

Hartford further argues that Plaintiffs proof of loss, even if timely, fails to meet the requirements set forth in the SFIP because "1) the date of loss is incorrect; 2) the information provided by Plaintiffs regarding mortgage or other entities in interest is not answered; and 3) 'provisional' is written into the amount claimed section, which means the insureds failed to submit a claim for sum certain."  (Berger Aff. ¶ 19.)

The RCBAP requires that the insured file a proof of loss within 60 days of the loss. 44 C.F.R. Pt. 61, App. A(3), VIII(J).

As part of that proof of loss, the policy requires that the insured furnish the WYO information regarding the date and time of the loss, the cause of the loss and the estimated amount of the loss.  44 C.F.R. Pt. 61, App. A(3), VIII(J).

The Third Circuit has held that it will strictly adhere to the sixty day period for providing proof of loss.  Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 810 (3d Cir. 2005); see also Heckler, 467 U.S. at 63 (finding that those who are eligible to receive public funds should be held accountable for knowing the requirements to collect those funds).  The explicit language of the SFIP makes clear that the WYO may only deviate from the express language of the policy when authorized to do so by the Federal Insurance Adjuster ("FIA"). 44 C.F.R. Pt. 61, App. A(3), VIII(D).  If necessary, an insured may request a waiver from the FIA that would authorize the WYO to deviate from the express language of the policy. See id.  Without a waiver, however, the WYO has no authority to waive any requirement of the SFIP because the WYO disburses federal funds when paying a claim.  See Van Holt, 163 F.3d at 165-66.

Moreover, the insured is assumed to be on notice of the sixty-day time period for filing a proof of loss because of the

explicit language of the policy, which is itself a codified
federal enactment.  See Heckler, 467 U.S. at 63; see also Fed.
Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947) (noting
that the appearance of rules and regulations in the federal
register gives legal notice of their contents).  Contrary to
Plaintiffs' arguments, the WYO does not have a duty to inform the
claimants of the proof of loss requirements or the consequences
of failing to satisfy them. See 44 C.F.R. Pt. 61 App. A(3),
VIII(J)(7); Humphrey v. NFIP, 885 F. Supp. 133, 137 (D. Md.
1995)(noting that insurers under the NFIP are not required to
demand compliance with relevant regulations because the
regulations provide the necessary incentives and consequences of
non-compliance).

       In this case, there is no evidence that Plaintiffs requested
or received a waiver from the FIA to lengthen the amount of time
in which they would be permitted to file a proof of loss.  If the
loss claimed by Plaintiffs occurred on February 17-23, 2003,
Plaintiffs were required to submit a proof of loss statement on
or about April 23, 2003.  Even if the Court were to toll the
sixty days from the moment Plaintiffs discovered the loss on or
about April 28, 2003, Plaintiffs would still be required to
submit a proof of loss statement on or about June 28, 2003.

Instead, Plaintiffs' proof of loss statement was not filed until the end of August, thus rendering the statement untimely by any standard.

Furthermore, the Estimate of Loss dated June 21, 2003 and submitted by Plaintiffs' adjuster does not meet the requirements for a valid proof of loss.  As mentioned above, the RCBAP includes specific information that must be included in a proof of loss.  In addition to being timely, a valid proof of loss must include, among other things, (1) the insured's sworn signature, (2) a brief explanation of how the loss happened, (3)the insureds' interest in the damaged property, (4) details of any other insurance covering the property, (5) changes in title or occupancy during the term of the policy, (6) names of mortgagees or anyone else having a lien, charge, or claim against the property, (7) details about who occupied any insured building at the time of loss and for what purpose, and an (8) inventory of damaged personal property. 44 C.F.R. Pt. 61 App. A(3), VIII(J)(4).  None of this required information is included in the Plaintiffs' adjuster's Estimate of Loss.  As a result, that estimate will not suffice as a substitute for a proper proof of loss.

Because the Third Circuit strictly adheres to the express language of the SFIP with respect to the filing of a proof of loss, this Court does not have to reach the issue of whether there is sufficient evidence of a flood and damages arising from a flood, or the issue of whether the claimed damages are covered by the insurance policy. Hartford's Motion for Summary Judgment will therefore be granted with respect to Plaintiffs' claim of breach of contract because a proper proof of loss was not submitted in a timely manner.

## IV.  CONCLUSION

For the aforementioned reasons, this Court will grant Hartford's Motion to Dismiss with respect to Plaintiffs' claim of breach of the duty of good faith and fair dealing, bad faith, attorney's fees and costs, and punitive damages because the claims are preempted by federal law.  This Court will also grant Hartford's Motion to Dismiss with respect to Plaintiffs' claims of misrepresentation and detrimental reliance because Plaintiff fails to state a claim on which relief may be granted.

This Court will grant Hartford's Motion for Summary Judgment with respect to Plaintiffs' claim of breach of contract because Plaintiffs failed to file a timely and substantively sufficient

proof of loss.

The accompanying Order shall issue today.


Dated: ____11-17-05_____        ___s/ Robert B. Kugler_____

                                ROBERT B. KUGLER
                                United States District Judge